# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48178-2-II |
| Respondent, | |
| v. | |
| ISAIAH CEE WHITE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Isaiah Cee White appeals his sentence for possession of a controlled substance, heroin, with intent to deliver within 1,000 feet of a school bus route stop, arguing the sentencing court erred in not conducting a proper individualized inquiry into his ability to pay legal financial obligations (LFOs). We hold that the sentencing court conducted the required inquiry and we refer the matter of appellate costs to a commissioner of this court. We affirm.

## FACTS

White pleaded guilty to possession of heroin with intent to deliver within 1,000 feet of a school bus route stop. During the sentencing hearing, White's defense counsel stated, "In regard to legal financial obligations, my client . . . owes his mother a thousand dollars; his last job he held was in March 2015 for two months; he has no real skills as a laborer." Report of Proceedings (RP) at 11-12. Counsel continued, "[H]e has the following physical problems. He has a stomach hernia, which we believe the future cost would be something like 5- to $6,000. He has a rotator cuff tear, which about $5,000 surgery. . . . It is too tough for him to work right now." RP at 12. Counsel

then asked the court to "consider dropping the $2,000 drug fund, the attorney fee of a thousand dollars, the fine of $500 and the court fee of $200." RP at 12.

The sentencing court then inquired about White's education. White replied that he received his GED at 17 years old. White was 28 years old at sentencing. The court then engaged in the following colloquy with White:

> THE COURT: . . . In terms of the legal and financial obligations, you know, your attorney talked about—what, a stomach hernia—
>
> MR. WHITE: Yeah.
>
> THE COURT:—or some is shoulder issues, rotator cuff, or something like that?
>
> MR. WHITE: Yeah.
>
> THE COURT: All right. When was the last time you had gainful employment? When was the last time you had a paying job?
>
> MR. WHITE: March this year.
>
> THE COURT: How many hours a week?
>
> MR. WHITE: Probably like 30.
>
> THE COURT: Doing what kind of work?
>
> MR. WHITE: Telemarketing.
>
> THE COURT: Okay.
>
> MR. WHITE: Like hearing aids.
>
> THE COURT: So there wouldn't be any physical reason you wouldn't be able to do something like that. Obviously, a criminal conviction is going to make it hard, but—
>
> MR. WHITE: Yeah.
>
> THE COURT:—the Court's not inclined to waive any of the legal financial obligations and will not do so.

RP at 15.

The sentencing court checked the box on the judgment and sentence that it considered White's "past, present, and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change." Clerk's Paper's (CP) at 59. The court consequently found, "the defendant has the ability to pay the legal financial obligations imposed herein." CP at 59. The court then sentenced White to 54 months of confinement and ordered him to pay LFOs as follows: $500 victim assessment, $200 criminal filing fee, $1,000 attorney fee, $2,000 drug enforcement fund, $100 deoxyribonucleic acid (DNA) collection fee, and $100 crime lab fee. White appealed.

## ANALYSIS

A.      INDIVIDUALIZED INQUIRY INTO ABILITY TO PAY

White argues that the trial court erred in not conducting an individualized inquiry into his ability to pay LFOs as required by RCW 10.01.160(3) and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015).[1] We disagree.

Defense counsel asked the court to "consider dropping the $2,000 drug fund, the attorney fee of a thousand dollars, the fine of $500 and the court fee of $200." RP at 12. Counsel's objection on the record is sufficient to preserve this issue for review. *See* RAP 2.5(a); *Blazina*, 182 Wn.2d at 830.

Generally, we review a trial court's compliance with a statute de novo. *State v. Johnson*, 96 Wn. App. 813, 816, 981 P.2d 25 (1999). If there is compliance with a statute, appellate courts

---

[1] White does not distinguish between mandatory LFOs, for which the sentencing court need not consider the defendant's ability to pay, and discretionary LFOs, which are subject to the requirements of RCW 10.01.160(3). *See State v. Mathers*, 193 Wn. App. 913, 918, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016). Mandatory fees are "victim restitution, victim assessments, DNA fees, and criminal filing fees." *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

review a decision on whether to impose LFOs for abuse of discretion. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991).

RCW 10.01.160(3) states, "In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." The record must reflect that the sentencing judge considered the defendant's individual financial circumstances and made an individualized inquiry into the defendant's current and future ability to pay. *Blazina*, 182 Wn.2d at 837-38. This inquiry also requires the court to consider other factors, such as incarceration and a defendant's other debts when determining a defendant's ability to pay. *Blazina*, 182 Wn.2d at 838-39.

Notably, here, the record shows discussion between the sentencing court, counsel, and White about White's ability to pay. The court considered that White was 28 years old and had a GED. The court also noted that White had prior debts and would incur future debt for medical expenses for his hernia and torn rotator cuff. The court next inquired into White's employment history. White admitted he had been working earlier that year as a telemarketer, working approximately 30 hours per week. White admitted there was no physical reason why he could not do similar work when he was released from confinement. The court then noted that a criminal conviction could "make it hard" to obtain employment but the court was not "inclined to waive any of the legal financial obligations." RP at 15.

Although this discussion may not be as thorough as White requests, he incorrectly argues that the trial court imposed LFOs without consideration of his ability to pay. Moreover, given that White received a relatively short sentence of 54 months and he has the ability to earn income as a telemarketer which is not hindered by his physical ailments, the sentencing court did not abuse its

4

discretion when it imposed LFOs. Given all, we hold that White does not establish a basis to remand the sentencing court's imposition of LFOs.

B.    APPELLATE COSTS

Next, White opposes appellate costs in light of *State v. Sinclair*, 192 Wn. App. 380, 389-90, 367 P.3d 612, *review denied*, 185 Wn.2d 1034 (2016), asserting that he does not have the ability to pay. Under *State v. Grant*, ___ Wn. App. ___, 385 P.3d 184, 187 (2016), a defendant is not required to address appellate costs in his or her briefing to preserve the ability to object to the imposition of costs after the State files a cost bill. A commissioner of this court will consider whether to award appellate costs in due course under the newly revised provisions of RAP 14.2 if the State decides to file a cost bill and if White objects to that cost bill.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, A.C.J.

_____
Lee, J.

5